DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE (CA State Bar No. 141930)
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:  (415) 276-6500
Facsimile:    (415) 276-6599
Email:  thomasburke@dwt.com

DAVIS WRIGHT TREMAINE LLP
DAN LAIDMAN (CA State Bar No. 274482)
865 South Figueroa Street, Suite 2400
Los Angeles, CA  90017-2566
Telephone:  (213) 633-6800
Email:  danlaidman@dwt.com

ACLU FOUNDATION OF SAN DIEGO
AND IMPERIAL COUNTIES
MITRA EBADOLAHI (CA State Bar No. 275157)
P.O. Box 87131
San Diego, CA 92138-7131
Telephone:  (619) 398-4187
Email:  mebadolahi@aclusandiego.org

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF SAN DIEGO AND IMPERIAL COUNTIES,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY and U.S. CUSTOMS AND BORDER PROTECTION,<br><br>Defendants. | Case No. '17 CV0733 L    JLB<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT,  5 U.S.C. § 552 et seq.** |

## **INTRODUCTION**

1.      The American Civil Liberties Union of San Diego and Imperial

Counties ("Plaintiff" or "ACLU") brings this action under the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, as amended, to obtain injunctive

**1**

4816-6893-1653v.3 -
4852-5651-0790v.1 0050033-000045

and other appropriate relief requiring Defendants U.S. Department of Homeland Security ("DHS") and U.S. Customs and Border Protection ("CBP") (collectively, "Defendants") to respond to a FOIA request sent by Plaintiff on February 2, 2017 ("Request"), and to promptly disclose the requested records.

2. The Request seeks records concerning CBP's local implementation of President Trump's January 27, 2017 Executive Order titled "Protecting the Nation From Foreign Terrorist Entry Into the United States," Exec. Order No. 13769, 82 Fed. Reg. 8977 (Feb. 1, 2017) ("Executive Order No. 1"), as well as any other judicial order or executive directive issued regarding Executive Order No.1, including President Trump's March 6, 2017 Executive Order, identically titled, Exec. Order No. 13780, 82 Fed. Reg. 13209 (Mar. 6, 2017) ("Executive Order No. 2") (collectively, "Executive Orders").  A true and correct copy of the Request is attached as **Exhibit A**.

3. Specifically, the Request seeks records concerning CBP's local implementation of the Executive Orders at sites within the purview of CBP's San Diego Field Office, including San Diego International Airport and the San Diego port of entry.

4. Among other things, the Executive Orders purport to halt refugee admissions and bar entrants from several predominantly Muslim countries from entering the United States.

5. Defendants' implementation of the Executive Orders has been the subject of significant public concern, as reflected by mass protests around the country, substantial news coverage, and numerous lawsuits filed following the President's signing of each Executive Order.

6. Over the weekend of January 27–29, 2017, at least five lawsuits resulted in emergency court orders enjoining implementation of various sections of

2

FOIA COMPLAINT
4816-6893-1653v.3 -
4852-5651-0790v.1 0050033-000045

Executive Order No. 1.[1]  On March 15, 2017, a district court enjoined implementation of Sections 2 and 6 of Executive Order No. 2.[2]

7.    News reports described Defendants' implementation of the Executive Orders as "chaotic" and "total[ly] lack[ing] . . . clarity and direction."[3]

8.    Official DHS statements reflected this confusion.  For example, DHS stated on January 28 that Executive Order No. 1 would "bar green card holders."[4] The next day, however, DHS Secretary John Kelly deemed "the entry of lawful permanent residents to be in the national interest"[5] and the government clarified that Executive Order No. 1 did *not* apply to green card holders.[6]

9.    Reportedly spurred by this chaos, on January 29, Senators Tammy Duckworth and Dick Durbin called upon the Office of the Inspector General of the Department of Homeland Security to investigate Defendants' implementation of Executive Order No. 1.[7]  The Senators specifically sought information regarding:

---

[1] *Vayeghan v. Kelly*, No. CV 17-0702, 2017 WL 396531 (C.D. Cal. Jan. 29, 2017); *Tootkaboni v. Trump*, No. 17-CV-10154, 2017 WL 386550 (D. Mass. Jan. 29, 2017); *Doe v. Trump*, No. C17-126, 2017 WL 388532 (W.D. Wash. Jan. 28, 2017); *Aziz v. Trump*, No. 1:17-CV-116, 2017 WL 386549 (E.D. Va. Jan. 28, 2017); *Darweesh v. Trump*, No. 17 CIV. 480 (AMD), 2017 WL 388504 (E.D.N.Y. Jan. 28, 2017).
[2] *Hawai'i v. Trump*, No. CV 17-00050 DKW-KSC, 2017 WL 1011673 (D. Haw. Mar. 15, 2017).
[3] *See, e.g.*, Ryan Devereaux *et al.*, *Homeland Security Inspector General Opens Investigation of Muslim Ban, Orders Document Preservation*, THE INTERCEPT, Feb. 1, 2017, *available at* https://theintercept.com/2017/02/01/homeland-security-inspector-general-opens-investigation-of-muslim-ban-rollout-orders-document-preservation/.
[4] *See* Max Greenwood, *Immigration Ban Includes Green Card Holders: DHS*, THE HILL, Jan. 28, 2017, *available at* http://thehill.com/policy/national-security/316670-trump-refugee-ban-bars-green-card-holders-report.
[5] *Statement By Secretary John Kelly On The Entry Of Lawful Permanent Residents Into The United States*, DEP'T OF HOMELAND SECURITY (Jan. 29, 2017), *available at* https://www.dhs.gov/news/2017/01/29/statement-secretary-john-kelly-entry-lawful-permanent-residents-united-states.
[6] *See* Robert Mackey, *As Protests Escalate, Trump Retreats From Barring Green Card Holders*, THE INTERCEPT, Jan. 29, 2017, *available at* https://theintercept.com/2017/01/29/trumps-executive-order-no-longer-bars-green-card-holders/.
[7] *See* Ryan Devereaux *et al.*, *Homeland Security Inspector General Opens Investigation of Muslim Ban, Orders Document Preservation*, THE INTERCEPT, Feb. 1, 2017, *available at* https://theintercept.com/2017/02/01/homeland-security-inspector-general-opens-investigation-of-muslim-ban-rollout-orders-document-preservation/.

3

FOIA COMPLAINT

any guidance Defendants provided to the White House in developing the order; any directions that were provided to Defendants in implementing it; whether CBP officers complied with the relevant court orders; and whether DHS and CBP officers kept a list of individuals that they had detained at ports of entry under the order. In response, the Inspector General directed Defendants' personnel to preserve all records "that might reasonably lead to the discovery of relevant information relating the implementation of" Executive Order No. 1.[8]

10.    Plaintiff's Request focuses on Defendants' local implementation of the Executive Orders at the port of entry at San Diego International Airport, a major international travel hub in a border region with a long history of taking in refugees. San Diego County admitted more than 3,000 refugees last year, including many from nations subject to the Executive Orders, and it has led California in such admissions each year since 2009.[9] Local residents and their families have been personally affected by the orders,[10] and more than a thousand people demonstrated at San Diego International Airport when the first order took effect in January 2017.[11]

_____

[8] *Id.*
[9] *See* John Wilkens and Peter Rowe, *Trump's refugee actions reverberate in San Diego, a longtime hub for nation's new arrivals*, SAN DIEGO UNION-TRIBUNE, Feb. 4, 2017, *available at* http://www.sandiegouniontribune.com/news/immigration/sd-me-refugee-hub-20170202-story.html; Tatiana Sanchez, *County tops in refugee resettlement*, SAN DIEGO UNION-TRIBUNE, Oct. 7, 2015, *available at* http://www.sandiegouniontribune.com/news/immigration/sdut-refugees-resettle-syria-iraq-chaldean-saigon-2015oct07-htmlstory.html.
[10] *See, e.g.*, Tom Fudge, *Yemeni Student Back In San Diego After Travel Ban Lifted*, KPBS, Feb. 6, 2017, *available at* http://www.kpbs.org/news/2017/feb/06/yemeni-student-back-san-diego-after-travel-ban-lif/; Astrid Solorzano, *Local Immigrants React to President Trump's Revised Travel Ban*, NBC SAN DIEGO, Mar. 6, 2017, *available at* http://www.nbcsandiego.com/news/local/Local-Immigrants-React-to-President-Trumps-Revised-Travel-Ban-415522953.html; Artie Ojeda, *Encinitas Student, Impacted by Previous Travel Ban, Praises Temporary Hold on New Ban*, NBC SAN DIEGO (Mar. 15, 2017), *available at* http://www.nbcsandiego.com/news/local/Encinitas-Student-Affected-by-Previous-Travel-Ban-Praises-Temporary-Hold-on-New-Ban-416286233.html.
[11] *See* Lyndsay Winkley, *Demonstrators swarm San Diego airport over travel ban*, SAN DIEGO UNION-TRIBUNE, Jan. 29, 2017, *available at* http://www.sandiegouniontribune.com/news/transportation/sd-me-immigration-protest-20170129-story.html.

4

11.    Disclosure of the records Plaintiff seeks through this action would facilitate the public's understanding of how Defendants implemented and enforced the Executive Orders in the San Diego Field Office, including in particular at San Diego International Airport.  Such information is critical to the public's ability to hold the government accountable.

12.    This action is necessary because Defendants have failed to provide Plaintiff with a determination as to whether they will comply with the Request, although more than 20 business days have elapsed since Defendants received the Request.

## JURISDICTION

13.    This Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties under 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. §§ 701–706, and 28 U.S.C. § 1331.

## VENUE

14.    Venue in the Southern District of California is proper under 5 U.S.C. § 552(a)(4)(B) as the requested agency records are, upon information and belief, situated within this District at CBP facilities at or near the San Diego Port of Entry Offices and/or San Diego International Airport, and because Plaintiff ACLU of San Diego and Imperial Counties' principal place of business is in the Southern District of California.  For the same reasons, venue also is proper under 28 U.S.C. § 1391(e).

## PARTIES

15.    Plaintiff is a non-profit, 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

16.    Defendant Department of Homeland Security is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

FOIA COMPLAINT

4816-6893-1653v.3 -
4852-5651-0790v.1 0050033-000045

17.    Defendant U.S. Customs and Border Protection is a component of DHS and is a federal agency within the meaning of 5 U.S.C. § 552(f)(1).

18.    Plaintiff is informed and therefore believes that Defendants have possession, custody, or control of the requested records.

## **FACTS**

19.    On February 2, 2017, Plaintiff sent the Request to CBP's San Diego Field Office and CBP's FOIA Officer at CBP Headquarters via certified, trackable mail.

20.    The Request sought copies of CBP's local interpretation and enforcement of the Executive Order at: 1) certain airports specified in the Request, including San Diego International Airport ("Local International Airport"); and 2) certain Port of Entry offices specified in the Request, including San Diego ("Port of Entry Offices").  The Request expressly did *not* seek information held in the records of CBP Headquarters.

21.    Specifically, the Request sought the following:

    1.  "Records created on or after January 27, 2017 concerning CBP's interpretation, enforcement, and implementation of the following at Local International Airport[]:

        a.    President Trump's Executive Order, signed on January 27, 2017 and titled 'Protecting the Nation From Foreign Terrorist Entry Into the United States';

        b.    Any guidance 'provided to DHS field personnel shortly' after President Trump signed the Executive Order, as referenced in CBP's online FAQ;[12]

---

[12] To assist CBP in responding, the Request included the following information in a footnote for reference: "*Protecting the Nation from Foreign Terrorist Entry into the United States*, U.S. CUSTOMS AND BORDER PROTECTION (Jan. 31, 2017), *available at* https://www.cbp.gov/border-security/protecting-nation-foreign-terrorist-entry-united-states ('The Executive Order and the instructions therein were effective at the time of the order's signing. *Guidance was provided to DHS field personnel shortly thereafter*.') (emphasis added)."

6

FOIA COMPLAINT

4816-6893-1653v.3 -
4852-5651-0790v.1 0050033-000045

1    c.    Associate Director of Field Operations for U.S. Citizenship and

2    Immigration Services Daniel M. Renaud's email, sent at 11:12

3    A.M. on January 27, 2017, instructing DHS employees that they

4    could not adjudicate any immigration claims from the seven

5    targeted countries;[13]

6    d.    Judge Donnelly's Decision and Order granting an Emergency

7    Motion for Stay of Removal, issued in the Eastern District of

8    New York on January 28, 2017, including records related to

9    CBP's efforts to comply with the court's oral order requiring

10    prompt production of a list of all class members detained by

11    CBP;[14]

12    e.    Judge Brinkema's Temporary Restraining Order, issued in the

13    Eastern District of Virginia on January 28, 2017;[15]

14    f.    Judge Zilly's Order Granting Emergency Motion for Stay of

15    Removal, issued in the Western District of Washington on

16    January 28, 2017;[16]

17    g.    Judge Burroughs' Temporary Restraining Order, issued in the

18    District of Massachusetts on January 29, 2017;[17]

---

[13] The following footnote was included for reference: "*See* Alice Speri and Ryan Devereaux, *Turmoil at DHS and State Department—'There Are People Literally Crying in the Office Here,'* THE INTERCEPT, Jan. 30, 2017, *available at* https://theintercept.com/2017/01/30/asylum-officials-and-state-department-in-turmoil-there-are-people-literally-crying-in-the-office-here/."

[14] The following footnote was included for reference: "Decision and Order, *Darweesh v. Trump*, No. 17 Civ. 480 (AMD) (E.D.N.Y. Jan. 28, 2017), *available at* https://www.aclu.org/legal-document/darweesh-v-trump-decision-and-order."

[15] The following footnote was included for reference: "Temporary Restraining Order, *Aziz v. Trump*, No. 1:17-cv-116 (E.D. Va. Jan. 28, 2017), *available* at https://www.justice4all.org/wp-content/uploads/2017/01/TRO-order-signed.pdf."

[16] The following footnote was included for reference: "Order Granting Emergency Motion for Stay of Removal, *Doe v. Trump*, No. C17-126 (W.D. Wash. Jan. 28, 2017), *available at* https://www.justsecurity.org/wpcontent/uploads/2017/01/Seattle-Order.pdf."

[17] The following footnote was included for reference: "Temporary Restraining Order, *Tootkaboni v. Trump*, No. 17-cv-10154 (D. Mass. Jan. 29, 2017), *available at*

7

---

FOIA COMPLAINT

h.    Judge Gee's Order granting an Amended *Ex Parte* Application for Temporary Restraining Order, issued in the Central District of California on January 29, 2017;[18]

i.    Assurances from the U.S. Attorney's Office for the Eastern District of Pennsylvania that all individuals detained at Philadelphia International Airport under the Executive Order would be admitted to the United States and released from custody on Sunday, January 29, 2017;

j.    DHS's 'Response to Recent Litigation' statement, issued on January 29, 2017;[19]

k.    DHS Secretary John Kelly's 'Statement on the Entry of Lawful Permanent Residents Into the United States,' issued on January 29, 2017;[20]

l.    DHS's 'Statement on Compliance with Court Orders and the President's Executive Order,' issued on January 29, 2017;[21] and

m.    Any other judicial order or executive directive issued regarding the Executive Order on or after January 27, 2017.

---

https://aclum.org/wp-content/uploads/2017/01/6-TRO-Jan-29-2017.pdf."

[18] The following footnote was included for reference: "Order, *Vayeghan v. Trump*, No. CV 17-0702 (C.D. Cal. Jan. 29, 2017), *available at* https://www.aclusocal.org/sites/default/files/vayeghan_-_order_re_tro.pdf."

[19] The following footnote was included for reference: "*Department of Homeland Security Response to Recent Litigation*, DEP'T OF HOMELAND SECURITY (Jan. 29, 2017), *available at* https://www.dhs.gov/news/2017/01/29/department-homeland-security-response-recent-litigation."

[20] *Statement By Secretary John Kelly On The Entry Of Lawful Permanent Residents Into the United States,* DEP'T OF HOMELAND SECURITY (Jan. 29, 2017), *available at* https://www.dhs.gov/news/2017/01/29/statement-secretary-john-kelly-entry-lawful-permanent-residents-united-states.

[21] The following footnote was included for reference: "*DHS Statement On Compliance With Court Orders And The President's Executive Order*, DEP'T OF HOMELAND SECURITY (Jan. 29, 2017), *available at* https://www.dhs.gov/news/2017/01/29/dhs-statement-compliance-court-orders-and-presidents-executive-order."

FOIA COMPLAINT

4816-6893-1653v.3 -
4852-5651-0790v.1 0050033-000045

2.   Records concerning the number of individuals who were detained or subjected to secondary screening, extending questioning, an enforcement examination, or consideration for a waiver at Local International Airport[] pursuant to the Executive Order, including:

   a.   The total number of individuals who remain detained or subject to secondary screening, extending questioning, an enforcement examination, or consideration for a waiver at Local International Airport[] both as of the date of this request and as of the date on which this request is processed; and

   b.   The total number of individuals who have been detained or subjected to secondary screening, extending questioning, an enforcement examination, or consideration for a waiver for any length of time at Local International Airport[] since January 27, 2017, including the number of individuals who have been

      i.    released,

      ii.   transferred into immigration detention, or

      iii.  removed from the United States;

3.   Records concerning the number of individuals who have been removed from Local International Airport[] from January 27, 2017 to date pursuant to the Executive Order;

4.   Records concerning the number of individuals who arrived at Local International Airport[] from January 27, 2017 to date with valid visas or green cards who subsequently agreed voluntarily to return; and

5.   Records containing the 'guidance' that was 'provided to DHS field personnel shortly' after President Trump signed the Executive Order."[22]

_____

[22] The following footnote was included for reference: "*Protecting the Nation from Foreign Terrorist Entry into the United States*, U.S. CUSTOMS AND BORDER

9

FOIA COMPLAINT
4816-6893-1653v.3 -
4852-5651-0790v.1 0050033-000045

Exh. A at 5-7.

22.    The Request included an application for expedited processing, on the grounds that there is a "compelling need" for these records under 5 U.S.C. § 552(a)(6)(E)(v)(II) because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity."  Exh. A at 8.

23.    The Request provided detail showing that the ACLU is primarily engaged in disseminating information within the meaning of 5 U.S.C. § 552(a)(6)(E)(v), given that a critical and substantial aspect of the ACLU's mission is to obtain information about government activity, analyze that information, and publish and disseminate that information widely to the press and public.  Exh. A at 8-12.

24.    The Request described examples of the ACLU's information-dissemination function.  *See* Exh. A at 8-12.

25.    The Request also included an application for a fee waiver or limitation under 5 U.S.C. § 552(a)(4)(A)(iii) on the grounds that disclosure of the requested records is in the public interest and is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  In particular, the ACLU emphasized that the Request would significantly contribute to public understanding on a matter of profound public importance about which scant specific information had been made public, *i.e.*, how local CBP Field Offices had enforced, and continue to enforce, the Executive Orders.  The Request also made clear that the ACLU plans to disseminate the information disclosed as a result of the Request to the public at no

---

PROTECTION (Jan. 31, 2017), *available at* https://www.cbp.gov/border-security/protecting-nation-foreign-terrorist-entry-united-states ('The Executive Order and the instructions therein were effective at the time of the order's signing. *Guidance was provided to DHS field personnel shortly thereafter.*') (emphasis added)."

FOIA COMPLAINT

4816-6893-1653v.3 -
4852-5651-0790v.1 0050033-000045

cost.  Exh. A at 12-13.

26.     The Request also applied for a waiver of search fees under 5 U.S.C. § 552(a)(4)(A)(ii)(II) on the grounds that Plaintiff qualifies as a "representative[] of the news media" and the records are not sought for commercial use, given the ACLU's non-profit mission and substantial activities to publish information for dissemination to the public, as discussed in greater detail in ¶ 25 above.  Exh. A at 13-14.

27.     CBP's San Diego Field Office received the Request on or about February 3, 2017, and CBP's FOIA Officer at CBP Headquarters received the request on or about February 6, 2017.

28.     As of April 12, 2017, more than 20 days (excepting Saturdays, Sundays, and legal public holidays) have elapsed since CBP and DHS received the Request.

29.     As of the filing date of this Complaint, Defendants have not notified Plaintiff of a determination as to whether Defendants will comply with the Request.

30.     Because Defendants failed to comply with the 20-business-day time limit provision of FOIA, 5 U.S.C. § 552(a)(6)(A)(i), Plaintiff is deemed to have exhausted its administrative remedies with respect to the Request under 5 U.S.C. § 552(a)(6)(C)(i).

**Violation of FOIA for Failure
to Provide a Determination
Within 20 Business Days**

31.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 30 above, inclusive.

32.     Defendants have a legal duty under FOIA to determine whether to comply with a request within 20 days (excepting Saturdays, Sundays, and legal public holidays) after receiving the request, and also have a legal duty to immediately notify the requester of the agency's determination and the reasons

FOIA COMPLAINT

4816-6893-1653v.3 -
4852-5651-0790v.1 0050033-000045

1  therefor.

2      33.    Defendants' failure to determine whether to comply with the Request

3  within 20 business days after receiving it violates FOIA, 5 U.S.C. § 552(a)(6)(A)(i),

4  and applicable regulations promulgated thereunder.

5                      **Violation of FOIA for Failure**

6                      **to Make Records Available**

7      34.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1

8  through 30 above, inclusive.

9      35.    Plaintiff has a legal right under FOIA to obtain the specific agency

10  records requested on February 2, 2017, and there exists no legal basis for

11  Defendants' failure to promptly make the requested records available to Plaintiff, its

12  members, and the public.

13      36.    Defendants' failure to promptly make available the records sought by

14  the Request violates FOIA, 5 U.S.C. § 552(a)(3)(A), and applicable regulations

15  promulgated thereunder.

16      37.    On information and belief, Defendants currently have possession,

17  custody or control of the requested records.

18                   **Violation of FOIA for Failure to**

19                   **Provide a Determination As To**

20                **Expedited Processing Within 10 Days**

21      38.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1

22  through 30 above, inclusive.

23      39.    Defendants have a legal duty under FOIA to determine whether to

24  provide expedited processing, and to provide notice of that determination to

25  Plaintiff, within 10 days after the date of the Request.

26      40.    Defendants' failure to determine whether to provide expedited

27  processing and to provide notice of that determination to Plaintiff within 10 days

28  after the date of the Request violates FOIA, 5 U.S.C. § 552(a)(6)(E)(ii)(I), and

12

FOIA COMPLAINT

4816-6893-1653v.3 -
4852-5651-0790v.1 0050033-000045

1  applicable regulations promulgated thereunder.

2       41.    Because Defendants have not provided a complete response to the

3  Request, this Court has jurisdiction under FOIA, 5 U.S.C. § 552(a)(6)(E)(iv) to

4  review Defendants' failure to make a determination concerning Plaintiff's request

5  for expedited processing.

6       **WHEREFORE**, Plaintiff requests that the Court award it the following

7  relief:

8       1.    Declare that Defendants violated FOIA by failing to determine

9  whether to comply with the Request within 20 business days and by failing to

10 immediately thereafter notify Plaintiff of such determination and the reasons

11 therefor;

12      2.    Declare that Defendants violated FOIA by failing to disclose the

13 requested records;

14      3.    Declare that Defendants violated FOIA by failing to determine whether

15 to provide expedited processing, and to provide notice of that determination to

16 Plaintiff, within 10 days;

17      4.    Order Defendants to immediately disclose the requested records to the

18 public and make copies immediately available to Plaintiff without charge for any

19 search or duplication fees, or, in the alternative, provide for expedited proceedings

20 to adjudicate Plaintiff's rights under FOIA;

21      5.    Award Plaintiff its reasonable costs and attorneys' fees; and

22 ///

23 ///

24 ///

25

26

27

28

---

13

FOIA COMPLAINT

4816-6893-1653v.3 -
4852-5651-0790v.1 0050033-000045

1        6.    Grant such other relief as the Court may deem just and proper.

2

3    DATED this 12th day of April, 2017.

4                              Respectfully submitted,

5                              DAVIS WRIGHT TREMAINE LLP
                          THOMAS R. BURKE

6                              DAN LAIDMAN

7                              ACLU FOUNDATION OF SAN DIEGO AND
                          IMPERIAL COUNTIES

8                              MITRA EBADOLAHI

9                              By:  /s/ Thomas R. Burke
                                  Thomas R. Burke

10

11                             Attorneys for Plaintiff
                          AMERICAN CIVIL LIBERTIES UNION OF
                          SAN DIEGO AND IMPERIAL COUNTIES

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

14

FOIA COMPLAINT

4816-6893-1653v.3 -
4852-5651-0790v.1 0050033-000045

 

February 2, 2017

U.S. Customs & Border Protection
610 W. Ash St, Suite 1200
San Diego, CA 92101

FOIA Officer
U.S. Customs & Border Protection
1300 Pennsylvania Avenue, NW Room 3.3D
Washington, D.C. 20229
Phone: (202) 344-1610

**Re:    Request Under Freedom of Information Act
(Expedited Processing & Fee Waiver/Limitation Requested)**

To Whom It May Concern:

The American Civil Liberties Union of San Diego and Imperial Counties and the American Civil Liberties Union of San Diego and Imperial Counties Foundation (together, "ACLU")[1] submits this Freedom of Information Act ("FOIA") request ("Request") for records about the implementation of President Trump's January 27, 2017 Executive Order ("Executive Order") by U.S. Customs and Border Protection ("CBP"). Titled "Protecting the Nation From Foreign Terrorist Entry Into the United States," the Executive Order halts refugee admissions and bars entrants from seven predominantly Muslim countries from entering the United States.[2] By this letter, which constitutes a request pursuant to FOIA, 5 U.S.C. § 552 *et seq.*, and the relevant implementing regulations, *see* 6 C.F.R. § 5 *et seq.*, the ACLU seeks information regarding CBP's **local implementation** of the Executive Order at international airports within the purview of the San Diego Field Office ("Field Office").

## I. Background

---

[1] The American Civil Liberties Union of San Diego & Imperial Counties is a non-profit, 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provide analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators. The American Civil Liberties Union Foundation of San Diego & Imperial Counties is a separate 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, educates the public about the civil rights and civil liberties implications of pending and proposed state and federal legislation, provides analyses of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

[2] Exec. Order No. 13769, 82 Fed. Reg. 8977 (Feb. 1, 2017).

1

On January 27, 2017, President Donald J. Trump issued an executive order that indefinitely blocks refugees from Syria from entering the United States, bars all refugees for 120 days, and prohibits individuals from seven predominantly Muslim countries—Iran, Iraq, Libya, Somalia, Sudan, Syria, and Yemen—from entering the United States for 90 days.[3]  By the following day, January 28, 2017, CBP officials across the country had detained an estimated 100 to 200 individuals at airports throughout the United States.[4] Two unions representing more than 21,000 federal immigration officers praised the Executive Order,[5] issuing a joint press release that "applaud[ed] the three executive orders [President Trump] has issued to date."[6] Daniel M. Renaud, Associate Director of Field Operations for U.S. Citizenship and Immigration Services, instructed Department of Homeland Security ("DHS") employees that they could no longer adjudicate any immigration claims from the seven countries targeted by the Executive Order.[7]

Beginning Saturday morning, protests erupted nationwide and attorneys rushed to airports to assist detained individuals and their families.[8] Over the next twenty-four hours, five federal courts ordered officials to temporarily stop enforcement of the Executive Order.[9] First, Judge Donnelly of the Eastern District of New York issued a nationwide order in *Darweesh v. Trump*, filed by the ACLU's Immigrants' Rights Project (among others), that prohibited the government from removing any detained travelers from the

---

[3] *See, e.g.*, Michael D. Shear and Helene Cooper, *Trump Bars Refugees and Citizens of 7 Muslim Countries*, N.Y. TIMES, Jan. 27, 2017, *available at* https://www.nytimes.com/2017/01/27/us/politics/trump-syrian-refugees.html.

[4] *See, e.g.*, Michael D. Shear *et al.*, *Judge Blocks Trump Order on Refugees Amid Chaos and Outcry Worldwide*, N.Y. TIMES, Jan. 28, 2017, *available at* https://www.nytimes.com/2017/01/28/us/refugees-detained-at-us-airports-prompting-legal-challenges-to-trumps-immigration-order.html.

[5] Robert Mackey, *America's Deportation Agents Love Trump's Ban and Rely on Breitbart for Their News*, THE INTERCEPT, Jan. 30, 2017, *available at* https://theintercept.com/2017/01/30/americas-deportation-agents-love-trumps-ban-rely-breitbart-news/.

[6] *Joint Press Release Between Border Patrol and ICE Councils*, NAT'L ICE COUNCIL, *available at* http://iceunion.org/news/joint-press-release-between-border-patrol-and-ice-councils.

[7] Alice Speri and Ryan Devereaux, *Turmoil at DHS and State Department—"There Are People Literally Crying in the Office Here,"* THE INTERCEPT, Jan. 30, 2017, *available at* https://theintercept.com/2017/01/30/asylum-officials-and-state-department-in-turmoil-there-are-people-literally-crying-in-the-office-here/.

[8] *See, e.g.*, Peter Baker, *Travelers Stranded and Protests Swell Over Trump Order*, N.Y. TIMES, Jan. 29, 2017, *available at* https://www.nytimes.com/2017/01/29/us/politics/white-house-official-in-reversal-says-green-card-holders-wont-be-barred.html; Issie Lapowsky and Andy Greenberg, *Trump's Ban Leaves Refugees in Civil Liberties Limbo*, WIRED, Jan. 28, 2017, *available at* https://www.wired.com/2017/01/trumps-refugee-ban-direct-assault-civil-liberties/; Zolan Kanno-Youngs and Ben Kesling, *Thousands Flood Cities' Streets to Protest Donald Trump's Immigration Ban*, WALL ST. J., Jan. 30, 2017, *available at* https://www.wsj.com/articles/protests-continue-against-trumps-executive-order-banning-some-from-u-s-1485735672.

[9] *See, e.g.*, Steve Vladeck, *The Airport Cases: What Happened, and What's Next?*, JUST SECURITY, Jan. 30, 2017, *available at* https://www.justsecurity.org/36960/stock-weekends-district-court-orders-immigration-eo/.

seven banned countries who had been legally authorized to enter the United States.[10] And a few hours later, in *Tootkaboni v. Trump*, filed by the ACLU of Massachusetts (among others), Judge Burroughs and Magistrate Judge Dein of the District of Massachusetts issued a nationwide order that not only prohibited the removal of such individuals, but also temporarily banned the government from detaining people affected by the Executive Order.[11]

At the same time, President Trump remained publicly committed to his opposing position. In the early hours of Sunday, January 29, 2017, after the five court orders had been issued, President Trump tweeted, "Our country needs strong borders and extreme vetting, NOW."[12] He also issued a statement on Facebook later that day, indicating that entry from the seven predominantly Muslim countries would remain blocked for the next ninety days.[13]

In the face of nationwide confusion about the scope and validity of the Executive Order, guidance from other relevant actors offered little clarity. For example, on Saturday, DHS confirmed that the ban "will bar green card holders."[14] But on Sunday, DHS Secretary John Kelly deemed "the entry of lawful permanent residents to be in the national interest"[15] and, that evening, the Trump administration clarified that the Executive Order

---

[10] Decision and Order, *Darweesh v. Trump*, No. 17 Civ. 480 (AMD) (E.D.N.Y. Jan. 28, 2017), *available at* https://www.aclu.org/legal-document/darweesh-v-trump-decision-and-order.

[11] Temporary Restraining Order, *Tootkaboni v. Trump*, No. 17-cv-10154 (D. Mass. Jan. 29, 2017), *available at* https://aclum.org/wp-content/uploads/2017/01/6-TRO-Jan-29-2017.pdf. Another federal court issued an order requiring that attorneys be allowed access to all lawful permanent residents detained at Dulles International Airport and barring the government from deporting any such individuals. *See* Temporary Restraining Order, *Aziz v. Trump*, No. 1:17-cv-116 (E.D. Va. Jan. 28, 2017), *available* at https://www.justice4all.org/wp-content/uploads/2017/01/TRO-order-signed.pdf. In *Doe v. Trump*, filed in part by the ACLU of Washington, the court banned the removal of two individuals. *See* Order Granting Emergency Motion for Stay of Removal, *Doe v. Trump*, No. C17-126 (W.D. Wash. Jan. 28, 2017), *available at* https://www.justsecurity.org/wp-content/uploads/2017/01/Seattle-Order.pdf. Finally, in *Vayeghan v. Trump*, filed in part by the ACLU of Southern California, the court ordered the government to permit an Iranian individual who had already been removed to Dubai to return to the United States and to admit him pursuant to his approved visa. Order, *Vayeghan v. Trump*, No. CV 17-0702 (C.D. Cal. Jan. 28, 2017), *available at* https://www.aclusocal.org/sites/default/files/vayeghan_-_order_re_tro.pdf.

[12] Donald J. Trump, TWITTER (Jan. 29, 2017 5:08 A.M.), https://twitter.com/realDonaldTrump/status/825692045532618753.

[13] Donald J. Trump, *Statement Regarding Recent Executive Order Concerning Extreme Vetting*, Jan. 29, 2017, *available at* https://www.facebook.com/DonaldTrump/posts/101585676436107 25 ("We will be issuing visas to all countries once we are sure we have reviewed and implemented the most secure policies over the next 90 days.").

[14] Max Greenwood, *Immigration Ban Includes Green Card Holders: DHS*, THE HILL, Jan. 28, 2017, *available at* http://thehill.com/policy/national-security/316670-trump-refugee-ban-bars-green-card-holders-report.

[15] *Statement By Secretary John Kelly On The Entry Of Lawful Permanent Residents Into The United States*, DEP'T OF HOMELAND SECURITY (Jan. 29, 2017), *available at* https://www.dhs.gov/news/2017/01/29/statement-secretary-john-kelly-entry-lawful-permanent-residents-united-states.

does not apply to green card holders.[16] The same day, DHS stated, perhaps contradictorily and without any elaboration, "We are and will remain in compliance with judicial orders. We are and will continue to enforce President Trump's executive order humanely and with professionalism."[17] On Monday, then–Acting Attorney General Sally Yates announced that the Department of Justice would not present arguments in defense of the Executive Order unless and until she became convinced that it was lawful.[18] Shortly thereafter, Ms. Yates was relieved of her position by President Trump.[19] The same evening, President Trump also replaced the acting director of U.S. Immigration and Customs Enforcement ("ICE").[20]

In spite of court orders to the contrary, some CBP officials appear to be continuing to detain individuals—though the approach appears to differ by location.[21] Accordingly, the ACLU seeks to supplement the public record to clarify CBP's understanding and implementation of the Executive Order at San Diego International Airport ("Local International Airport") and San Diego ("Port of Entry Offices"). Through this request, the ACLU aims to facilitate the public's indispensable role in checking the power of our public officials and to learn about the facts on the ground in San Diego, California and the Local International Airport.

---

[16] Robert Mackey, *As Protests Escalate, Trump Retreats From Barring Green Card Holders*, THE INTERCEPT, Jan, 29, 2017, *available at* https://theintercept.com/2017/01/29/trumps-executive-order-no-longer-bars-green-card-holders/.

[17] *DHS Statement On Compliance With Court Orders And The President's Executive Order*, DEP'T OF HOMELAND SECURITY (Jan. 29, 2017), *available at* https://www.dhs.gov/news/2017/01/29/dhs-statement-compliance-court-orders-and-presidents-executive-order.

[18] Jonathan H. Adler, *Acting Attorney General Orders Justice Department Attorneys Not to Defend Immigration Executive Order*, WASH. POST, Jan. 30, 2017, *available at* https://www.washingtonpost.com/news/volokh-conspiracy/wp/2017/01/30/acting-attorney-general-orders-justice-department-attorneys-not-to-defend-immigration-executive-order/.

[19] *Read the Full White House Statement on Sally Yates*, BOSTON GLOBE, Jan. 30, 2017, *available at* https://www.bostonglobe.com/news/politics/2017/01/30/read-full-white-house-statement-sally-yates/HkFReIYJidU9deDelPK6SM/story.html.

[20] *Statement from Secretary Kelly on the President's Appointment of Thomas D. Homan as Acting ICE Director*, DEP'T OF HOMELAND SECURITY (Jan. 30, 2017), *available at* https://www.dhs.gov/news/2017/01/30/statement-secretary-kelly-presidents-appointment-thomas-d-homan-acting-ice-director.

[21] *See, e.g.*, Julia Wick, *Lawyers Say At Least 17 People Are Still Detained at LAX, Protests Continue*, LAIST, Jan. 29, 2017, *available at* http://laist.com/2017/01/29/people_are_still_detained_at_lax.php; Daniel Marans, *Customs and Border Officials Defy Court Order on Lawful Residents*, HUFFINGTON POST, Jan. 29, 2017, *available at* http://www.huffingtonpost.com/entry/dulles-airport-feds-violated-court-order_us_588d7274e4b08a14f7e67bcf; Tom Cleary, *Is Border Patrol Defying Federal Judge's Stay on Immigration Executive Order?*, HEAVY, Jan. 29, 2017, *available at* http://heavy.com/news/2017/01/border-patrol-homeland-security-defying-ignoring-following-judge-ruling-stay-immigration-executive-order-dulles-dfw-muslim-ban/; Tess Owen, *Waiting for Answers: We Still Don't Know How Many People are Being Detained at US Airports*, VICE NEWS, Jan. 30, 2017, *available at* https://news.vice.com/story/we-still-dont-know-how-many-people-are-being-detained-at-us-airports.

## II. Requested Records

For the purposes of this Request, "Records" are collectively defined to include, but are not limited to: text communications between phones or other electronic devices (including, but not limited to, communications sent via SMS or other text, Blackberry Messenger, iMessage, WhatsApp, Signal, Gchat, or Twitter direct message); e-mails; images, video, and audio recorded on cell phones; voicemail messages; social-media posts; instructions; directives; guidance documents; formal and informal presentations; training documents; bulletins; alerts; updates; advisories; reports; legal and policy memoranda; contracts or agreements; minutes or notes of meetings and phone calls; and memoranda of understanding. The ACLU seeks release of the following:

1.     Records created on or after January 27, 2017 concerning CBP's interpretation, enforcement, and implementation of the following at Local International Airports:

    a.    President Trump's Executive Order, signed on January 27, 2017 and titled "Protecting the Nation From Foreign Terrorist Entry Into the United States";

    b.    Any guidance "provided to DHS field personnel shortly" after President Trump signed the Executive Order, as referenced in CBP's online FAQ;[22]

    c.    Associate Director of Field Operations for U.S. Citizenship and Immigration Services Daniel M. Renaud's email, sent at 11:12 A.M. on January 27, 2017, instructing DHS employees that they could not adjudicate any immigration claims from the seven targeted countries;[23]

    d.    Judge Donnelly's Decision and Order granting an Emergency Motion for Stay of Removal, issued in the Eastern District of New York on January 27, 2017, including records related to CBP's efforts to comply with the court's oral order requiring prompt production of a list of all class members detained by CBP;[24]

    e.    Judge Brinkema's Temporary Restraining Order, issued in the Eastern District of Virginia on January 28, 2017;[25]

---

[22] *Protecting the Nation from Foreign Terrorist Entry into the United States*, U.S. CUSTOMS AND BORDER PROTECTION (Jan. 31, 2017), *available at* https://www.cbp.gov/border-security/protecting-nation-foreign-terrorist-entry-united-states ("The Executive Order and the instructions therein were effective at the time of the order's signing. *Guidance was provided to DHS field personnel shortly thereafter*.") (emphasis added).

[23] *See* Alice Speri and Ryan Devereaux, *Turmoil at DHS and State Department—"There Are People Literally Crying in the Office Here,"* THE INTERCEPT, Jan. 30, 2017, *available at* https://theintercept.com/2017/01/30/asylum-officials-and-state-department-in-turmoil-there-are-people-literally-crying-in-the-office-here/.

[24] Decision and Order, *Darweesh v. Trump*, No. 17 Civ. 480 (AMD) (E.D.N.Y. Jan. 28, 2017), *available at* https://www.aclu.org/legal-document/darweesh-v-trump-decision-and-order.

[25] Temporary Restraining Order, *Aziz v. Trump*, No. 1:17-cv-116 (E.D. Va. Jan. 28, 2017), *available* at https://www.justice4all.org/wp-content/uploads/2017/01/TRO-order-signed.pdf.

f.   Judge Zilly's Order Granting Emergency Motion for Stay of Removal, issued in the Western District of Washington on January 28, 2017;[26]

g.   Judge Burroughs' Temporary Restraining Order, issued in the District of Massachusetts on January 29, 2017;[27]

h.   Judge Gee's Order granting an Amended *Ex Parte* Application for Temporary Restraining Order, issued in the Central District of California on January 29, 2017;[28]

i.   Assurances from the U.S. Attorney's Office for the Eastern District of Pennsylvania that all individuals detained at Philadelphia International Airport under the Executive Order would be admitted to the United States and released from custody on Sunday, January 29, 2017;

j.   DHS's "Response to Recent Litigation" statement, issued on January 29, 2017;[29]

k.   DHS Secretary John Kelly's "Statement on the Entry of Lawful Permanent Residents Into the United States," issued on January 29, 2017;[30]

l.   DHS's "Statement on Compliance with Court Orders and the President's Executive Order," issued on January 29, 2017;[31] and

m.   Any other judicial order or executive directive issued regarding the Executive Order on or after January 27, 2017.

2.   Records concerning the number of individuals who were detained or subjected to secondary screening, extending questioning, an enforcement examination, or consideration for a waiver at Local International Airports pursuant to the Executive Order, including:

---

[26] Order Granting Emergency Motion for Stay of Removal, *Doe v. Trump*, No. C17-126 (W.D. Wash. Jan. 28, 2017), *available at* https://www.justsecurity.org/wpcontent/uploads/2017/01/Seattle-Order.pdf.

[27] Temporary Restraining Order, *Tootkaboni v. Trump*, No. 17-cv-10154 (D. Mass. Jan. 29, 2017), *available at* https://aclum.org/wp-content/uploads/2017/01/6-TRO-Jan-29-2017.pdf.

[28] Order, *Vayeghan v. Trump*, No. CV 17-0702 (C.D. Cal. Jan. 28, 2017), *available at* https://www.aclusocal.org/sites/default/files/vayeghan_-_order_re_tro.pdf.

[29] *Department of Homeland Security Response to Recent Litigation*, DEP'T OF HOMELAND SECURITY (Jan. 29, 2017), *available at* https://www.dhs.gov/news/2017/01/29/department-homeland-security-response-recent-litigation.

[30] *Statement from Secretary Kelly on the President's Appointment of Thomas D. Homan as Acting ICE Director*, DEP'T OF HOMELAND SECURITY (Jan. 30, 2017), *available at* https://www.dhs.gov/news/2017/01/30/statement-secretary-kelly-presidents-appointment-thomas-d-homan-acting-ice-director.

[31] *DHS Statement On Compliance With Court Orders And The President's Executive Order*, DEP'T OF HOMELAND SECURITY (Jan. 29, 2017), *available at* https://www.dhs.gov/news/2017/01/29/dhs-statement-compliance-court-orders-and-presidents-executive-order.

a. The total number of individuals who remain detained or subject to secondary screening, extending questioning, an enforcement examination, or consideration for a waiver at Local International Airports both as of the date of this request and as of the date on which this request is processed; and

b. The total number of individuals who have been detained or subjected to secondary screening, extending questioning, an enforcement examination, or consideration for a waiver for any length of time at Local International Airports since January 27, 2017, including the number of individuals who have been

   i. released,

   ii. transferred into immigration detention, or

   iii. removed from the United States;

3. Records concerning the number of individuals who have been removed from Local International Airports from January 27, 2017 to date pursuant to the Executive Order;

4. Records concerning the number of individuals who arrived at Local International Airports from January 27, 2017 to date with valid visas or green cards who subsequently agreed voluntarily to return; and

5. Records containing the "guidance" that was "provided to DHS field personnel shortly" after President Trump signed the Executive Order.[32]

   **To reiterate: The ACLU seeks information regarding CBP's interpretation and enforcement of the Executive Order at the Local International Airports, not information held in the records of CBP Headquarters.** Specifically, the ACLU seeks records held by CBP employees and offices at the Local International Airports, and the corresponding Port of Entry Offices and Regional Field Operations Office. CBP has an obligation to search all such field offices that are reasonably expected to produce any relevant information. *See, e.g.*, *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Marks v. U.S. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978) (agency not required to search all of its field offices because request did not ask for a search beyond the agency's central files); *see also Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 230 (D.D.C. 2013).

   We request that searches of all electronic and paper/manual indices, filing systems, and locations for any and all records relating or referring to the subject of our Request be conducted. Given the expedited timeline on which the relevant events and interpretations occurred, this includes the personal email accounts and work phones of all employees and

---

[32] *Protecting the Nation from Foreign Terrorist Entry into the United States*, U.S. CUSTOMS AND BORDER PROTECTION (Jan. 31, 2017), *available at* https://www.cbp.gov/border-security/protecting-nation-foreign-terrorist-entry-united-states ("The Executive Order and the instructions therein were effective at the time of the order's signing. *Guidance was provided to DHS field personnel shortly thereafter*.") (emphasis added).

former employees who may have sent or received emails or text messages regarding the subject matter of this Request, as well as all institutional, shared, group, duty, task force, and all other joint and/or multi-user email accounts and work phones which may have been utilized by each such employee or former employee. Additionally, for each relevant email account identified, all storage areas must be searched, including the inbox "folder" (and all subfolders therein), sent folder, deleted folder, and all relevant archive files.

If any records responsive or potentially responsive to the Request have been destroyed, our Request includes, but is not limited to, any and all records relating or referring to the destruction of those records. This includes, but is not limited to, any and all records relating or referring to the events leading to the destruction of those records.

As required by the relevant case law, the agency should follow any leads it discovers during the conduct of its searches and should perform additional searches when said leads indicate that records may be located in another system. Failure to follow clear leads is a violation of FOIA.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive electronic records be provided electronically in their native file format, if possible. Alternatively, the ACLU requests that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

### III. Application for Expedited Processing

The ACLU requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).[33] There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

A.    *The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute. 5 U.S.C. § 552(a)(6)(E)(v)(II).[34] Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See ACLU v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be

---

[33] *See also* 6 C.F.R. § 5.5(e)(1).

[34] *See also* 6 C.F.R. § 5.5(e)(1)(ii).

"primarily engaged in disseminating information").[35]

The ACLU regularly publishes STAND, a print magazine that reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 620,000 people. The ACLU also publishes regular updates and alerts via email to approximately 2.1 million subscribers (both ACLU members and non-members). These updates are additionally broadcast to 1.5 million social media followers (members and non-members). The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU of San Diego & Imperial Counties ("ACLU-SDIC") regularly emails its nearly 30,000 subscribers with updates and alerts about important civil liberties issues. The affiliate sends news and information to its audience of 5100 Twitter followers and 6800 Facebook friends on a daily basis. In the month of January 2017, ACLU-SDIC's Facebook posts received 211,000 views and ACLU-SDIC's tweets received 545,000 views. ACLU-SDIC's quarterly newsletter reaches approximately 1,000 people. The annual membership report and meeting notice was mailed to more than 8000 people. ACLU-SDIC regularly issues press statements and shares statements generated by the national office and other California affiliates. ACLU-SDIC creates talking points, memes and fact sheets that it shares with community partners, who in turn disseminate the information broadly to their constituents.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news,[36] and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[37]

---

[35] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g.*, *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. U.S. Dep't of Defense*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

[36] *See, e.g.*, Press Release, American Civil Liberties Union, *U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit* (Aug. 6, 2016), https://www.aclu.org/news/us-releases-drone-strike-playbook-response-aclu-lawsuit; Press Release, *American Civil Liberties Union, Secret Documents Describe Graphic Abuse and Admit Mistakes* (June 14, 2016), https://www.aclu.org/news/cia-releases-dozens-torture-documents-response-aclu-lawsuit; Press Release, *American Civil Liberties Union, U.S. Releases Targeted Killing Memo in Response to Long-Running ACLU Lawsuit* (June 23, 2014), https://www.aclu.org/national-security/us-releases-targeted-killing-memo-response-long-running-aclu-lawsuit; Press Release, *American Civil Liberties Union, Justice Department White Paper Details Rationale for Targeted Killing of Americans* (Feb. 4, 2013), https://www.aclu.org/national-security/justice-department-white-paper-details-rationale-targeted-killing-americans; Press Release, *American Civil Liberties Union, Documents Show FBI Monitored Bay Area Occupy Movement* (Sept. 14, 2012), https://www.aclu.org/news/documents-show-fbi-monitored-bay-area-occupy-movement-insidebayareacom.

[37] *See, e.g.*, Karen DeYoung, *Newly Declassified Document Sheds Light on How President Approves Drone Strikes,* Wash. Post, Aug. 6, 2016, https://www.washingtonpost.com/world/national-security/newly-declassified-document-sheds-light-on-how-president-approves-drone-strikes/2016/08/06/f424fe50-5be0-11e6-831d-0324760ca856_story.html (quoting former ACLU deputy legal director Jameel Jaffer); Catherine Thorbecke, *What Newly Released CIA Documents Reveal About 'Torture'*

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[38] The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.[39]

The ACLU publishes a widely-read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* https://www.aclu.org/multimedia. The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org.[40] The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The

---

*in Its Former Detention Program,* ABC, June 15, 2016, http://abcnews.go.com/US/newly-released-cia-documents-reveal-torture-detention-program/story?id=39873389 (quoting ACLU staff attorney Dror Ladin); Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Device,* Guardian, Mar. 17, 2016, https://www.theguardian.com/world/2016/mar/17/us-marshals-stingray-surveillance-airborne (quoting ACLU attorney Nate Wessler); David Welna, *Government Suspected of Wanting CIA Torture Report to Remain Secret,* NPR, Dec. 9, 2015, http://www.npr.org/2015/12/09/459026249/cia-torture-report-may-remain-secret (quoting ACLU project director Hina Shamsi).

[38] *See, e.g.,* ACLU, *ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site* (Nov. 22, 2016, 3:15 PM), https://www.aclu.org/blog/speak-freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; ACLU, *Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most* (Aug. 8, 2016, 5:30 PM), https://www.aclu.org/blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most; ACLU, *ACLU- Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida* (Feb. 22, 2015, 5:30 PM), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; ACLU, *New NSA Documents Shine More Light into Black Box of Executive Order 12333* (Oct. 30, 2014, 3:29 PM), https://www.aclu.org/blog/new-nsa-documents-shine-more-light-black-box-executive-order-12333; ACLU, *ACLU Eye on the FBI: Documents Reveal Lack of Privacy Safeguards and Guidance in Government's "Suspicious Activity Report" Systems* (Oct. 29, 2013), https://www.aclu.org/sites/default/files/assets/eye_on_fbi_-_sars.pdf.

[39] *See, e.g.,* ACLU of San Diego and Imperial Counties, *Know Your Rights With Border Patrol,* https://www.aclusandiego.org/wp-content/uploads/2014/10/KYR-2-pg-flyer-final.pdf (last visited Feb. 2, 2017); *see also, e.g.,* ACLU of San Diego and Imperial Counties, *What to Do If You're Stopped By the Police,* https://www.aclusandiego.org/wp-content/uploads/2014/10/What-to-Do-Police-Stops-web.pdf (last visited Feb. 2, 2017).

[40] The ACLU of San Diego and Imperial Counties affiliate website (www.aclusandiego.org) also addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains documents relating to the issues on which the ACLU is focused.

ACLU's website also serves as a clearinghouse for news about ACLU cases, as well as analysis about case developments, and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant Congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.

The ACLU website includes many features on information obtained through the FOIA.[41] For example, the ACLU's "Predator Drones FOIA" webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves. Similarly, the ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of FOIA documents relating to government policies on rendition, detention, and interrogation.[42] The ACLU of San Diego & Imperial Counties affiliate website also publishes information obtained through FOIA requests.[43]

The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA. For example, through compilation and analysis of information gathered from various sources—including information obtained from the government through FOIA requests—the ACLU created an original chart that provides the public and news media with a comprehensive summary index of Bush-era Office of Legal Counsel memos relating to interrogation, detention, rendition, and surveillance.[44] Similarly, the ACLU produced a summary of documents released in response to a FOIA request related to the FISA Amendments Act[45]; a chart of original statistics about the Defense Department's use of National Security Letters based on its own analysis of records obtained through FOIA requests[46]; and an analysis of documents obtained through FOIA requests about FBI surveillance flights over

---

[41] See, e.g., https://www.aclu.org/blog/free-future/fbi-releases-details-zero-day-exploit-decisionmaking-process; https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; https://www.aclu.org/national-security/anwar-al-awlaki-foia-request; https://www.aclu.org/cases/aclu-v-department-defense; https://www.aclu.org/mappingthefbi; https://www.aclu.org/cases/bagram-foia; https://www.aclu.org/national-security/csrt-foia; http://www.aclu.org/safefree/nsaspying/30022res20060207.html; https://www.aclu.org/patriot-foia; https://www.aclu.org/nsl-documents-released-dod?redirect=cpredirect/32088.

[42] https://www.thetorturedatabase.org. See also https://www.aclu.org/foia-collection/targeted-killing-foia-database.

[43] See, e.g., Press Release, ACLU of San Diego & Imperial Counties, CBP Releases Report, New Training Handbook (May 22, 2014), http://www.aclusandiego.org/radio-silence-border-patrol-use-force-policies-leads-lawsuit/ (last visited Feb 2, 2017).

[44] https://www.aclu.org/sites/default/files/pdfs/safefree/olcmemos_2009_0305.pdf.

[45] https://www.aclu.org/files/pdfs/natsec/faafoia20101129/20101129Summary.pdf.

[46] https://www.aclu.org/sites/default/files/field_document/nsl_stats.pdf.

Baltimore.[47]

The ACLU plans to analyze, publish, and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use and the requesters plan to disseminate the information disclosed as a result of this Request to the public at no cost.

B.    *The records sought are urgently needed to inform the public about actual or alleged government activity.*

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).[48] Specifically, as discussed in Part I, *supra*, the requested records seek to inform the public about the CBP's current, local enforcement of a new Executive Order amid five court orders, varying directives, and other quickly developing events.

Given the foregoing, the ACLU has satisfied the requirements for expedited processing of this Request.

## IV. Application for Waiver or Limitation of Fees

The ACLU requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).[49] The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

A.    *The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the ACLU.*

As discussed above, news accounts underscore the substantial public interest in the records sought through this Request. Given the ongoing and widespread media attention to this issue, the records sought will significantly contribute to public understanding of an issue of profound public importance. Especially because little specific information has been made public about how local CBP Field Offices plan to enforce the Executive Order while also complying with the federal court orders, the records sought are certain to contribute significantly to the public's understanding of these issues.

---

[47] https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights.

[48] *See also* 6 C.F.R. § 5.5(e)(1)(ii).

[49] *See also* 6 C.F.R. § 5.11(k).

The ACLU is not filing this Request to further its commercial interest. As described above, any information disclosed by the ACLU as a result of this FOIA Request will be available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending the FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

B.     *The ACLU is a representative of the news media and the records are not sought for commercial use.*

The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III);[50] *see also Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's Action Network v. U.S. Dep't of Defense*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. U.S. Dep't of Justice*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); *ACLU*, 321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU is therefore a "representative of the news media" for the same reasons it is "primarily engaged in the dissemination of information."

Furthermore, courts have found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's to be "representatives of the news media" as well. *See, e.g.*, *Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[51]

---

[50] *See also* 6 C.F.R. § 5.11(b)(6).

[51] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information / public education activities. *See, e.g.*, *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; s*ee also*

On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."[52] As was true in those instances, the ACLU meets the requirements for a fee waiver here.

*     *     *

Pursuant to applicable statutes and regulations, the ACLU expects a determination regarding expedited processing within 10 days. *See* 5 U.S.C. § 552(a)(6)(E)(ii); 6 C.F.R. § 5.5(e)(4).

If the Request is denied in whole or in part, the ACLU asks that you justify all deletions by reference to specific FOIA exemptions. The ACLU expects the release of all segregable portions of otherwise exempt material. The ACLU reserves the right to appeal a decision to withhold any information or deny a waiver of fees.

Thank you for your prompt attention to this matter. Please furnish the applicable records to:

**ACLU Border Litigation Project**
**c/o Mitra Ebadolahi**
P.O. Box 87131

---

*Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53-54.

[52] In May 2016, the FBI granted a fee-waiver request regarding a FOIA request issued to the DOJ for documents related to Countering Violent Extremism Programs. In April 2013, the National Security Division of the DOJ granted a fee-waiver request with respect to a request for documents relating to the FISA Amendments Act. Also in April 2013, the DOJ granted a fee-waiver request regarding a FOIA request for documents related to "national security letters" issued under the Electronic Communications Privacy Act. In August 2013, the FBI granted a fee-waiver request related to the same FOIA request issued to the DOJ. In June 2011, the DOJ National Security Division granted a fee waiver to the ACLU with respect to a request for documents relating to the interpretation and implementation of a section of the PATRIOT Act. In March 2009, the State Department granted a fee waiver to the ACLU with regard to a FOIA request for documents relating to the detention, interrogation, treatment, or prosecution of suspected terrorists. Likewise, in December 2008, the Department of Justice granted the ACLU a fee waiver with respect to the same request. In November 2006, the Department of Health and Human Services granted a fee waiver to the ACLU with regard to a FOIA request. In May 2005, the U.S. Department of Commerce granted a fee waiver to the ACLU with respect to its request for information regarding the radio-frequency identification chips in United States passports. In March 2005, the Department of State granted a fee waiver to the ACLU for a request regarding the use of immigration laws to exclude prominent non-citizen scholars and intellectuals from the country because of their political views, statements, or associations. In addition, the Department of Defense did not charge the ACLU fees associated with FOIA requests submitted by the ACLU in April 2007, June 2006, February 2006, and October 2003. The DOJ did not charge the ACLU fees associated with FOIA requests submitted by the ACLU in November 2007, December 2005, and December 2004. Finally, three separate agencies—the Federal Bureau of Investigation, the Office of Intelligence Policy and Review, and the DOJ Office of Information and Privacy—did not charge the ACLU fees associated with a FOIA request submitted by the ACLU in August 2002. On April 18, 2016, U.S. Immigration and Customs Enforcement did not charge the ACLU-SDIC fees associated with a FOIA request submitted by the ACLU-SDIC in December, 2014. The Department of Homeland Security, including Customs and Border Protection and other components within DHS, did not charge fees associated with a FOIA request submitted by the ACLU of Southern California and ACLU Border Litigation Project in July 2014.

San Diego, CA 92138-7131

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

Respectfully,

Mitra Ebadolahi
Border Litigation Project Staff Attorney
American Civil Liberties Union of San
Diego & Imperial Counties
Direct: 619.398.4187
Email: mebadolahi@aclusandiego.org