DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE (CA State Bar No. 141930)
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: thomasburke@dwt.com

DAVIS WRIGHT TREMAINE LLP
DAN LAIDMAN (CA State Bar No. 274482)
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Telephone: (213) 633-6800
Email: danlaidman@dwt.com

ACLU FOUNDATION OF SAN DIEGO
AND IMPERIAL COUNTIES
MITRA EBADOLAHI (CA State Bar No. 275157)
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4187
Email: mebadolahi@aclusandiego.org

Attorneys for Plaintiff
AMERICAN CIVIL LIBERTIES UNION OF
SAN DIEGO AND IMPERIAL COUNTIES

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF SAN DIEGO AND IMPERIAL COUNTIES,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY and U.S. CUSTOMS AND BORDER PROTECTION,<br><br>Defendants. | Case No. **3:17-cv-00733-L-JLB**<br>Assigned to Hon. Jill L. Burkhardt<br><br>**JOINT STATUS REPORT**<br><br>ENE Date:  November 6, 2017<br>Time:  10:30 a.m.<br><br>Action Filed:  April 12, 2017 |

1

Plaintiff American Civil Liberties Union of San Diego and Imperial Counties and Defendants U.S. Department of Homeland Security ("DHS") and U.S. Customs and Border Protection ("CBP") respectfully submit this Joint Status Report in advance of the further Early Neutral Evaluation ("ENE") scheduled for November 6, 2017.  The parties incorporate by reference their previously filed Joint Discovery Plan and Joint Status Report.  ECF Nos. 46, 48.

**I.      Plaintiff's Position.**

On October 17, 2017, this Court continued the ENE for 20 days and ordered Defendants (1) to identify a reasonable processing rate and specific production timeline, and (2) to produce records responsive to Plaintiff's Freedom of Information Act ("FOIA") request prior to the November 6, 2017 ENE.  Defendants have not complied with the Court's directions or justified any further delay.

*First*, Defendants still refuse to provide *any* specific production schedule – e.g., no start or end dates – indicating only that CBP intends to release records on an indefinite rolling basis.  They still fail to provide any evidence or particularized explanation as to why they cannot process the relatively small number of San Diego-specific records at issue in a timely manner.  Instead, they repeat the same conclusory assertion about the agency's purported burdens in responding to *other* requests by *different entities* seeking *different records*.  This issue already was litigated and decided in Plaintiff's favor when the United States Judicial Panel on Multidistrict Litigation ("MDL") denied Defendants' request to consolidate this lawsuit with other FOIA cases related to the Executive Orders.  *See* ECF No. 40.  The MDL panel permitted this action to proceed independently, on its own terms, which means that the other lawsuits are not a proper basis for Defendants to shirk their disclosure obligations here.  *Id.*

If anything, CBP itself has made responding to Plaintiff's request more burdensome with its decision to flout the MDL ruling and centralize processing in Washington in conjunction with other, unrelated FOIA requests.  CBP essentially has

2

taken the straightforward task of searching a relatively small number of accounts in San Diego and processing a few thousand emails and made it far more complicated than necessary. In advance of the last ENE, Defendants represented that CBP has collected approximately 3,555 potentially responsive email messages and attachments from three records custodians in the San Diego Field Office and Port of San Diego. Presumably, this is not the *totality* of CBP's anticipated production of responsive records – only the start. Accordingly, CBP should be required to produce these records promptly so that Plaintiff can determine if the production is sufficiently responsive and the parties can address further searches, proceed to summary judgment, or end the litigation.

*Second*, Defendants have not identified a processing rate for the San Diego-specific records responsive to Plaintiff's request. Instead they estimate that CBP will process approximately 3,575 pages per month *nationwide* in response to all Executive Order-related FOIA requests, including those at issue in the MDL ruling. Of course, this number could include *no* pages responsive to Plaintiff's request in any given month, making it patently unreasonable beyond the general impropriety of centralizing the processing of the different requests despite the MDL ruling.

Defendants' claim about fairness to other FOIA requesters also rings hollow because they granted Plaintiff's request for expedited processing under 5 U.S.C. § 552(a)(6)(E)(v)(II). The statute contemplates that some requests will be processed ahead of others, and Defendants determined *more than five months ago*, on May 26, 2017, that Plaintiff has shown a compelling need for prompt disclosure.

Courts frequently order agencies to process thousands of pages per month in response to particular FOIA requests on matters of significant public interest, regardless of the agencies' claims about the burdens of responding to other requests. *E.g.*, *Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) (explaining that a "court … may use its equitable powers to require the agency to process documents according to a court-imposed timeline" and ordering FBI to process 5,000 records a

3

month); *Seavey v. DOJ*, --- F.Supp.3d ----, 2017 WL 3112816, at *4-6 (D.D.C. July 20, 2017) (ordering production "at a rate of not less than 2,850 pages per month" despite FBI's claim that 500 pages would be consistent with its "comprehensive policy" for responding to all FOIA requests); *Electronic Privacy Information Center v. FBI*, 933 F. Supp. 2d 42, 48-50 (D.D.C. 2013) (rejecting FBI's claim that "'exceptionally large number' of FOIA cases involving the FBI currently in litigation" justified only processing 1,500 pages per month, and ordering significantly higher volume in response to plaintiff's request).

The Western District of Washington rejected Defendants' same arguments in another Executive Order-related FOIA suit, and ordered them to process 1,000 pages per month of records that are specifically responsive to those plaintiffs' request, with the production to be completed by January 16, 2018. *See ACLU of Washington et al. v. DHS*, W.D. Wash. No. C17-00562, ECF No. 36 (Oct. 20, 2017). Remarkably, Defendants seek to use that order to justify delaying disclosure in this case, an approach that "would create a new definition of chutzpah." *Embury v. King*, 361 F.3d 562, 566 n.21 (9th Cir. 2004) (defining chutzpah as "that quality enshrined in a man who, having killed his mother and father, throws himself on the mercy of the court because he is an orphan") (quotation omitted).

*Third*, Defendants have not meaningfully complied with the Court's direction to produce additional responsive records prior to the November 6 ENE. On October 24, 2017, CBP posted 250 pages of heavily redacted records to its website, which apparently have been drawn from a centralized search relating to all of the Executive Order-related FOIA cases. CBP indicates that *seven pages* out of 250 are responsive to "All Field Offices," and *zero pages* are specifically responsive to Plaintiff's request for records from the San Diego Field Office.

More than nine months have passed since Plaintiff made its FOIA request. Despite recognizing the strong public interest here and granting expedited

4

processing, Defendants still have not committed to any specific timeline for disclosure. Therefore, Plaintiff proposes that the Court adopt the following schedule:

(1) Defendants shall process the approximately 3,555 potentially responsive email messages and attachments CBP has collected from three custodians in the San Diego Field Office and the Port of San Diego and produce all non-exempt responsive records and a Vaughn index within 60 days;

(2) The parties shall file a Joint Status Report no later than 30 days after the production is completed addressing whether the production is sufficiently responsive or further searches are required, and proposing an appropriate timeline for additional processing or the filing of dispositive motions.

## II.     Defendants' Position.

*CBP's Processing Rate.* As Defendants previously explained, CBP has applied a core list of search terms to the records it has collected from 85 custodians in the various field offices covered by the ACLU affiliates' requests. Application of this core list of search terms identifies over 30,000 potentially responsive records totaling over 90,000 pages (not including spreadsheets). With respect to the Plaintiff's request in particular, the search terms identify approximately 1,540 records totaling approximately 4,300 pages (not including spreadsheets).

Plaintiff refers in several places to the approximately 3,555 records the agency has collected from custodians in the San Diego Field Office and the Port of San Diego, which reflect the total number of emails collected from those custodians. The agency has discretion to apply reasonable search terms to these records, and there is no requirement that the agency review for responsiveness and withholdings every single record before application of search terms. *See, e.g.*, *Bigwood v. DOD*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015) ("A federal agency has discretion in crafting a list of search terms that they believe to be reasonably tailored to uncover documents responsive to the FOIA request." (citations omitted)).

5

At this point, Defendants estimate that CBP can process on average 3,575 pages of potentially responsive records per month, across all ACLU affiliate requests for field office records, of which Plaintiff's is one.[1] CBP intends to release responsive, non-exempt records to Plaintiff and the other ACLU affiliates[2] on a rolling basis until processing of the records identified by the core search terms is complete. As that process nears completion, the agency intends to consider, based on its review of these records and consultations with Plaintiff and the other ACLU affiliates, whether additional searching is required. Rather than setting a production schedule based on this current estimated rate—which would result in the completion of the processing of the records identified by the core list of search terms for all ACLU affiliates' requests in approximately 27 months—Defendants submit that CBP make rolling productions and submit quarterly joint status reports so that the Court can monitor the agency's progress.

The agency's current estimated processing rate reflects the agency's best guess of its processing capabilities at this time based on its current level of resources, current levels of staffing and FOIA experience, and current competing FOIA and litigation obligations. That estimated rate may change as the review process ramps up due to any number of factors, including reviewers' increased experience with the FOIA and the particular records at issue; changes to the agency's other FOIA obligations; discussions with Plaintiff and the other ACLU affiliates' about narrowing the scope of the request; and if the fruits of streamlining review of similar

---

[1] Though Plaintiff represents above that this processing rate applies "*nationwide* in response to all Executive Order-related FOIA requests," this estimated processing rate reflects the agency's processing of only the ACLU affiliate field office requests—not all Executive Order related FOIA requests.

[2] All 18 requests submitted on February 2, 2017 request that responsive records be released to Ms. Ebadolahi. The ACLU of Michigan's supplemental request submitted on February 10, 2017 requests that responsive records be released to Mr. Juan Caballero. The agency has been making all releases to both Ms. Ebadolahi and Mr. Caballero.

JOINT STATUS REPORT
4818-4686-8046v.1 0201195-000002

records are greater than anticipated. Rolling productions—rather than a firm completion deadline based on the agency's estimates of its processing capacity right now—along with quarterly status reports would better enable the Court and the parties to monitor the agency's progress and adjust accordingly.

CBP's current estimated average monthly processing rate of 3,575 pages reflects the agency's best efforts to process Plaintiff's and the other ACLU affiliates' requests as soon as practicable. 5 U.S.C. § 552(a)(6)(E)(iii) (expedited requests must be processed "as soon as practicable"). What is practicable—and hence what is required by the statute—will vary depending on the size, scope, detail, and complexity of the issues presented by the request; other agencies or components which must be consulted or to which documents might have to be referred for additional review; exemption issues; and the resources available to process the request. These considerations substantially limit the agency's current ability to process the request faster than its estimated processing rate.[3]

First, the review of records potentially responsive to Plaintiff's request is complex, as many of these documents implicate sensitive information compiled for law enforcement purposes, privileged information, or personally identifiable information of individual travelers, the disclosure of which would constitute an invasion of privacy. FOIA review is substantially different from and more time-consuming than document review for civil discovery. As a result, review rates for FOIA processing are not comparable to those achievable in civil discovery. CBP's reviewers—many of whom are not lawyers—must engage in line-by-line review of records to apply redactions for statutory exemptions. Each record is reviewed by a first-level reviewer, a second-level reviewer, and an agency attorney. In addition, many records implicate the equities of other agencies or components of DHS and

---

[3] The representations made herein regarding the agency's review process, processing efforts, and resource considerations are supported by a forthcoming declaration that will be filed in the parallel action in the Northern District of Illinois.

7

thus require inter- or intra-agency consultations, which necessarily take time. Notably, the agency's review involves personnel in various field offices, including—in addition to CBP government information specialists who are dedicated FOIA processors—individuals brought in for temporary details and attorneys from CBP's Office of Chief Counsel.

Second, as Defendants have explained in prior filings, the agency's FOIA resources are stretched thin. The agency has received a substantial increase in FOIA requests in Fiscal Year 2017, exceeding requests from Fiscal Year 2016 by approximately 33% and exceeding requests from Fiscal Year 2015 by approximately 70%. In particular, the agency has received over 100 requests related to Executive Orders 13,769 and/or 13,780, both entitled "Protecting the Nation from Foreign Terrorist Entry Into the United States." At least 21 of these requests are the subject of litigation in actions in district courts throughout the country. In addition, the agency has received approximately 90 requests related to the President's proposed border wall, 52 of which are still open and four of which are currently in litigation.

Third, Plaintiff's case does not exist in a vacuum. The agency's estimate that it can process on average 3,575 pages per month across all of the ACLU cases reflects the agency's efforts to devote substantial resources to processing the ACLU affiliates' requests while managing its other competing FOIA obligations. Already, two orders in the parallel cases in the Western District of Washington and the Eastern District of Michigan require the agency to process approximately 6,100 pages in 90 days and 820 pages per month, respectively. *See ACLU of Washington v. DHS*, No. C17-00562-MJP (W.D. Wash. Oct. 20, 2017) (ECF No. 36); *ACLU of Michigan v. DHS*, No. 17-cv-11149 (E.D. Mich. Oct. 26, 2017). These orders alone monopolize approximately 80% of the agency's estimated processing capacity for the ACLU field office requests over the next three months. Another similar burdensome order here would effectively force the other ACLU affiliates to wait in the back of the line. What Plaintiff terms "chutzpah" is simply a refusal to turn a blind eye to what is

8

occurring in actions that Plaintiff itself has described as a "coordinated" litigation effort regarding "coordinated FOIA filings"[4] and a corresponding acknowledgement that the agency's FOIA resources are finite.

Moreover, Plaintiff's request—because it was aggregated with the other ACLU affiliates' requests—was granted expedited treatment, *see* 6 C.F.R. § 5.5(e), which means that it was already moved ahead all non-expedited requests, but behind earlier-filed requests in the expedited processing queue. In asking the Court to order CBP to further accelerate the processing of its request, Plaintiff effectively demands that the agency displace expedited requests ahead of Plaintiff's in the processing queue, which are no less important or time-sensitive than Plaintiff's. Such a result would be inequitable and inconsistent with the agency's obligations under the FOIA. *See Daily Caller v. DOS*, No. 15-1777 (BAH), 2015 WL 9907802, at *11 (D.D.C. Dec. 8, 2015) ("[T]he plaintiff's effort to accelerate review of its requests necessarily will displace in processing priority those of third parties who submitted equally urgent requests *before* the plaintiff."); *EPIC v. DOJ*, 15 F. Supp. 3d 32, 47 (D.D.C. 2014) (recognizing that given finite agency resources, "allowing EPIC to jump to the head of the line would upset the agency's processes and be detrimental to the other expedited requesters"); *cf. Exner v. FBI*, 542 F.2d 1121, 1123 (9th Cir. 1976) (holding that agency processing of requests on "first in first out" basis is reasonable and that court orders prioritizing processing of a request can result "mov[ing] such petitioner 'up the line'"); *Caifano v. Wampler*, 588 F. Supp. 1392, 1394 (N.D. Ill. 1984) (concluding that ordering agency to prioritize particular plaintiff's request

---

[4] *See, e.g.*, ACLU of Delaware Files Lawsuit Demanding Documents on Implementation of Trump Muslim Ban (Apr. 12, 2017), https://www.aclu-de.org/news/aclu-of-delaware-demandsdocuments-on-implementation-of-trump-muslim-ban/2017/04/12; ACLU, Press Release, *ACLU Files Demands for Documents on Implementation of Trump's Muslim Ban* (Feb. 2, 2017), https://www.aclu.org/news/aclu-filesdemands-documents-implementation-trumps-muslim-ban.

would have effect of "'vault[ing]' plaintiff's request over the requests of other individuals who were ahead of him in the FOIA line but who did not seek judicial relieve," which "would unfairly prejudice those other individuals."). Moreover, several of the requests that would be displaced by Plaintiff's demand also concern Executive Order 13,769 and seek records about the implementation or enforcement of the Executive Order nationwide, as opposed to Plaintiff's "local" request.

Fourth, the agency believes that the most efficient and expeditious way to process the potentially responsive records for all the ACLU affiliates' requests—and thus hasten the ultimate release of responsive, non-exempt records—is not to parse the records to satisfy processing thresholds specific to individual field offices. The agency believes that such a review process would allow the agency to take advantage of certain efficiencies, including de-duplication of records across cases and streamlined review of records raising similar issues regarding responsiveness and withholdings. Not only would this expedite the release of responsive, non-exempt records, it would also ensure more consistent and accurate treatment of exempt information, including sensitive law enforcement information and information implicating individual travelers' privacy rights. *See, e.g.*, *Daily Caller v. DOS*, 152 F. Supp. 3d 1, 15 (D.D.C. 2015) (noting that compelling production on truncated timeline "raises a significant risk of inadvertent disclosure of records properly subject to exemption under FOIA"); *Allied Progress v. CFPB*, No. 17-686 (CKK), 2017 WL 1750263, at *7 (D.D.C. May 4, 2017) (recognizing that "ordering production by a date-certain would impugn . . . the interest in ensuring that agencies have sufficient time to review materials for responsiveness and exemptions"). By contrast, requiring the agency to process records on a case-by-case basis to meet field office-specific processing thresholds may slow the release of records, as the agency will need to shift resources to identify and focus its review on records tied to particular field offices, rather than conducting the review in the most efficient manner possible.

1    Finally, Plaintiff's suggestion that the Judicial Panel on Multidistrict Litigation
2 addressed the manner in which the agency must process Plaintiff's FOIA request is
3 without merit.  Though the Panel denied Defendants' motion to consolidate the
4 litigation, it did not address any substantive issue regarding the processing of the
5 ACLU affiliates' FOIA requests.  Moreover, counsel for the ACLU affiliates
6 represented before the Panel that formal coordination through the MDL process was
7 unnecessary, because the ACLU affiliates would informally coordinate.  *See, e.g.*,
8 Mem. of Pls.' in Opp'n to Defs.' Mot. to Transfer at 17-18, *In re ACLU FOIA*
9 *Requests Regarding Executive Order 13769*, MDL No. 2786 (J.P.M.L. May 30,
10 2017) (ECF No. 47).  Plaintiff now relies on the MDL ruling to *refuse* coordination.
11 Furthermore, Plaintiff fails to recognize that CBP's FOIA processing is a zero-sum
12 endeavor. To the extent one ACLU affiliate is given priority, the next ACLU affiliate
13 will fall further down the queue.   With 18 such requests, one affiliate will be first,
14 and another, by necessity, will be 18th. The more efficient method of processing, as
15 we have described, is to process the requests together—a consolidating of like
16 requests expressly authorized by statute.  *See* 5 U.S.C. § 552(a)(6)(B)(iv); 6 C.F.R. §
17 5.5(d).

18    *CBP's Fourth Interim Release*.  On October 27, 2017, CBP made a fourth
19 interim release of records to Plaintiff and the other ACLU affiliates.  The release
20 totaled 269 pages—19 of which were withheld—of field office records.  The release
21 contained seven pages of records responsive to the San Diego Field Office.  As
22 Defendants have explained above, CBP believes that the most efficient and
23 expeditious manner in which to process the ACLU affiliate requests and release the
24 records requested by all ACLU affiliates is to process the records without field
25 office-specific processing thresholds.  As a result, the processing of records for a
26 particular field office will vary from month to month.
27    *Plaintiff's Request for a* Vaughn *index.*  Plaintiff's demand for a "*Vaughn*
28 index," *see Vaughn v. Rosen*, 428 F.2d 820 (D.C. Cir. 1973), within 60 days is

11

unwarranted and premature. Plaintiff has not established that it has any right to a *Vaughn* index, let alone one within 60 days. A *Vaughn* index often includes a list of "each document withheld, the statutory exemption[s] claimed, and a particularized explanation of how disclosure of the particular document[s] would damage the interest[s] protected by the claimed exemption[s]." *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991). However, "there is no statutory requirement for a *Vaughn* index," *Fiduccia v. DOJ*, 185 F.3d 1035, 1045 (9th Cir. 1999), and the Ninth Circuit has recognized that "*Vaughn* indices . . . are not appropriate in all FOIA cases." *Minier v. CIA*, 88 F.3d 796, 804 (9th Cir. 1996).

It is the agency's burden under the FOIA to sustain its claimed withholdings, and as such, the agency is best positioned to assess in the first instance what information it must provide, and in what form, to carry its burden, or to conclude (if applicable) that preparing a *Vaughn* index would be unnecessary or overly burdensome. If after review of the agency's submission, the Court concludes that more is needed to sustain the agency's withholdings, the Court may require the agency to provide more information at that time. That still may not warrant a document-by-document index of the sort Plaintiff appears to demand. *See, e.g.*, *Fiduccia*, 185 F.3d at 1044 ("Any form . . . may be adequate or inadequate, depending on the circumstances."); *Minier*, 88 F.3d at 804 (*Vaughn* index not required where "affidavit submitted by an agency is sufficient to establish" withholdings); *Lewis v. IRS*, 823 F.2d 375, 380 (9th Cir. 1987) (*Vaughn* index not required where claimed exemption is "dependent on the category of the requested records rather than the individual subject matters contained within each document"); *see also Bonner v. DOS*, 928 F.2d 1148, 1151 (D.C. Cir. 1991) (Ginsburg, J.) ("Representative sampling is an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved.").

Furthermore, any request for a *Vaughn* index is certainly premature at this stage. "[T]he purpose of a *Vaughn* index is to aid a district court in its ruling on

12

claimed exemptions to FOIA," *Lewis v. IRS*, 823 F.2d 375, 380 (9th Cir. 1987), and courts ordinarily consider the validity of claimed exemptions at summary judgment, *see, e.g.*, *Lane v. Dep't of Interior*, 523 F.3d 1128, 1134-35 (9th Cir. 2008). "Generally, agencies should be given the opportunity to file dispositive motions and produce affidavits regarding claimed exemptions before they are ordered to produce *Vaughn* indices." *Ioane v. Comm'r of Internal Revenue*, No. 3:09-CV-00243-RCJ-(RAM), 2010 WL 2600689, at * (D. Nev. Mar. 11, 2010); *see also Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993) ("The plaintiff's early attempt in litigation of this kind to obtain a *Vaughn* index . . . is inappropriate until the government has first had a chance to provide the court with the information necessary to make a decision on the applicable exemptions."); *Stimac v. DOJ*, 620 F. Supp. 212, 213 (D.D.C. 1985) ("[T]he preparation of a *Vaughn* index would be premature before the filing of dispositive motions."). Indeed, Plaintiff indicates that the approximately 3,555 records they want processed within 60 days is "only a start" to the searching. While Defendants do not take a position on that at this time, CBP has also explained that it intends to consider at a later point whether additional searching would be reasonable. Plaintiff's demand for a *Vaughn* index prior to the completion of the processing of Plaintiff's request is thus, meritless.

In addition, Defendants expect to meet and confer with Plaintiff prior to the filing of dispositive motions in an effort to narrow the issues of dispute regarding claimed exemptions. Plaintiff's demand that the agency prepare a *Vaughn* index justifying each withholding the agency has made while simultaneously processing 3,555 records would impose a substantial unnecessary burden on the agency, given the likelihood that the parties may agree that only a subset of the agency's withholdings are in dispute.

Finally, Defendants object to any demand that it file a *Vaughn* index prior to the completion of the processing of, at the very least, all the records identified by the core list of search terms across all the ACLU affiliates' requests. Preparing an index

13

of information withheld from disclosure is burdensome on agencies even in run-of-the-mill FOIA cases. Ordering the agency to do so while it continues to process the other ACLU affiliate field office requests would require the agency to divert resources away from the processing and release of responsive, non-exempt records for requests that are obviously just as important as Plaintiff's. Such a diversion of resources necessarily will delay the agency's release of responsive, non-exempt records, and does not reflect an equitable use of the agency's finite resources.

DATED: November 3, 2017

DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE
DAN LAIDMAN

ACLU FOUNDATION OF SAN DIEGO AND IMPERIAL COUNTIES
MITRA EBADOLAHI

By: /s/ Thomas R. Burke
    Thomas R. Burke
    Attorneys for Plaintiff
    AMERICAN CIVIL LIBERTIES UNION OF SAN DIEGO AND IMPERIAL COUNTIES

DATED: November 3, 2017

UNITED STATES DEPARTMENT OF JUSTICE
MATTHEW J. BERNS
CHETAN A. PATIL

By: /s/ Chetan A. Patil
    Chetan A. Patil
    Attorneys for Defendants
    U.S. DEPARTMENT OF HOMELAND SECURITY AND U.S. CUSTOMS AND BORDER PROTECTION

## SIGNATURE CERTIFICATION

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to Chetan A. Patil, counsel for defendants U.S. Department of Homeland Security and U.S. Customs and Border Protection, and that I have obtained Mr. Patil's authorization to affix his electronic signature to this document.

    /s/ Thomas R. Burke
THOMAS R. BURKE